# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2025-WC-01107-COA

**AJINOMOTO FOODS NORTH AMERICA AND LIBERTY INSURANCE CORPORATION**                   **APPELLANTS**

**v.**

**CHRISTY MOORE**                                                                              **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/18/2025 |
| TRIBUNAL FROM WHICH APPEALED: | MISSISSIPPI WORKERS' COMPENSATION COMMISSION |
| ATTORNEYS FOR APPELLANTS: | GEORGE E. READ TAMARA V. McGEE |
| ATTORNEYS FOR APPELLEE: | RAYNETRA LASHELL GUSTAVIS ANNA CLAIRE RYAN |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | AFFIRMED - 07/28/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., McCARTY AND LASSITTER ST. PÉ, JJ.**

**LASSITTER ST. PÉ, J., FOR THE COURT:**

¶1.     Ajinomoto Foods North America and its insurance carrier, Liberty Insurance Corporation,[1] appeal the Mississippi Workers' Compensation Commission's order finding that former employee Christy Moore suffered a total occupational loss of use in both her right and left hands and work-related osteoarthritis and awarding her permanent total disability benefits.

¶2.     The Employer argues that the Commission erred in finding Moore's injuries to be a total occupational loss, claiming that the Commission misapplied the presumption outlined

---

[1] Collectively referred to as "the Employer" or "Ajinomoto."

by the Supreme Court in *Meridian Professional Baseball Club v. Jensen*, 828 So. 2d 740 (Miss. 2002). The Employer also argues that the Commission erred by finding Moore's osteoarthritis to be compensable and claims that medical evidence supports a finding that the injury was unrelated to her employment at Ajinomoto.

¶3.     After review, we find no error and affirm the Commission's order.

## FACTS AND PROCEDURAL HISTORY

¶4.     Christy Moore began working at Ajinomoto in September 2018. Moore was assigned to a production line that required her to repetitively stuff and fold burritos by hand. After some time in this role, Moore was moved to a different area known as "pack-out." In the pack-out line, Moore was required to quickly place flash-frozen burritos into boxes. Employees wore cotton gloves with latex gloves underneath to help protect their hands from the frozen burritos.

¶5.     When Moore started in pack-out, the frozen burritos caused pain in her hands, which she reported to her supervisor, Amanda Webb. Webb testified that she gave Moore extra gloves, which some other employees used in the pack-out area, but Webb said that Moore's hand pain continued.[2] Webb spoke with her supervisor, who spoke with Moore, and Webb and her supervisor agreed to move Moore off the pack-out line until Moore had been seen by a doctor.

¶6.     Moore went to Dr. Theresa Pickle and requested an evaluation for Raynaud's disease, in which poor circulation can cause pain and coldness in the hands. Dr. Pickle cleared Moore

---

[2] Moore testified that she was refused extra gloves.

2

to return to work, and Moore returned to the pack-out line. Moore's testimony was unclear how many times she worked in pack-out, but her final day was September 30, 2019. Moore was originally assigned to pack-out but was sent home due to the issues with her hands. However, Webb testified that she never saw any medical restriction from Moore. Webb also testified that Moore never reported to her any concerns of carpal tunnel syndrome, numbness, tingling, or arthritis.

¶7.     Ajinomoto's human resources (HR) coordinator testified that on October 1, 2019, Moore left a voicemail with the HR department stating that she could not report to work due to rheumatoid arthritis. Owens later spoke with Moore and explained that she would need a doctor's excuse to validate her absence. Moore did not mention carpal tunnel pain or suggest that she had suffered a workplace injury. Owens did not hear from Moore again, and due to Ajinomoto's "no call, no show" policy, Moore's failure to report to work meant she was considered to have voluntarily resigned.

¶8.     Moore saw Dr. Daneca DiPaolo on October 23, 2019, and reported issues with her right hand. Dr. DiPaolo diagnosed Moore with bilateral carpal tunnel syndrome (CTS) and recommended surgery. Dr. DiPaolo performed surgery on Moore's right hand nine days later. Moore saw Dr. DiPaolo for two post-operative visits in November 2019.

¶9.     In December 2019, Moore filed a petition to controvert, alleging a workplace injury to her wrists and right elbow due to the repetitive nature of her work at Ajinomoto.

¶10.    Moore returned to Dr. DiPaolo in September 2020, May 2021, November 2021, December 2021, and March 2022. During those visits, Moore reported various complaints

3

of hand pain and upper arm pain. Dr. DiPaolo diagnosed her with left CTS and bilateral hand and elbow arthritis. Moore underwent a surgery in December 2021 for her left CTS. Following the surgery, she reported some left thumb pain to Dr. DiPaolo but did not seek further treatment.

¶11. During the workers' compensation proceedings, Moore was seen by the Employer's medical expert, Dr. Cooper Terry. Dr. Terry diagnosed her with bilateral CTS and agreed it had been caused by her work at Ajinomoto. He assigned an 8% impairment rating to her right arm and a 2% rating to her left. A secondary evaluation led him to increase the left arm impairment rating to 3%. Dr. Terry imposed work restrictions on Moore's right arm but released her to full-duty work with her left.

¶12. Dr. DiPaolo assigned an 8% impairment rating to both Moore's left and right hands and imposed restrictions on both for no repetitive use or lifting over ten pounds. Dr. DiPaolo testified at a deposition that Moore was capable of light duty work within her restrictions.

¶13. The Employer's vocational expert identified thirty-four job leads within thirty-five miles of Moore's residence that required light duty and did not involve repetitive movement.[3] Some of these included van driver, security guard, assembler, cashier, cook, shift lead, inspector, production worker, teller, hotel clerk, kitchen aid, crew leader, hostess, and retail sales consultant. Moore had prior work experience in some of these areas, including restaurant, hotel, and cashier work. In each of these jobs, Moore reported that she had to constantly lift and carry heavy items. She had never worked a sedentary job or with a lifting

---

[3] Moore has a felony conviction that prevents her from certain employment.

restriction of ten pounds or less.

¶14.  Moore applied for every job the vocational expert identified, except one. She also applied twice to Ajinomoto. Despite the vocational expert's advice, Moore generally did not apply in person, and in many applications, she volunteered information about her physical limitations and injuries. Her job search was sporadic; she applied only for seven jobs that were not provided to her by the vocational expert. In all, Moore submitted sixty-six applications and received only one response, from Chili's. When she spoke with the Chili's manager, she asked if the role required heavy lifting and disclosed her restrictions. It is unclear if the interview took place after this.

## ANALYSIS

¶15.  The Employer argues that the Commission erred by concluding Moore was entitled to a presumption of total occupational loss as outlined in *Meridian Prof. Baseball Club v. Jensen*, 828 So. 2d 740 (Miss. 2002), because Moore did not prove that she conducted a reasonable job search. The Employer also argues the Commission's conclusion that Moore's osteoarthritis was causally connected to her employment is not supported by medical evidence.

¶16.  The Court has a limited standard of review when reviewing a workers' compensation appeal. *RDJJ Servs. Inc. v. Rivera*, 322 So. 3d 500, 505 (¶13) (Miss. Ct. App. 2021). We recognize that the Commission is the ultimate fact-finder, and we give deference to the Commission's decisions on issues of fact and credibility. *Id.* We will affirm where the Commission's order is supported by substantial evidence and will reverse only if the order

was clearly erroneous or contrary to the overwhelming weight of the evidence. *Id.*

¶17.    When reviewing the Commission's decision, we will not substitute our own judgment for the Commission's, even if we would have reached the opposite conclusion. *Id.* When the evidence is conflicting, we presume that the Commission, sitting as the trier of fact, has determined which evidence is credible and which is not. *Id.*

### I.    Finding of Total Occupational Loss

¶18.    The Employer's primary argument is that the Commission erred in finding Moore suffered a total occupational loss of both hands and was permanently and totally disabled because Moore "failed to conduct a reasonable job search." The Employer states that under *Jensen*, a reasonable job search "is an essential prerequisite to invoking the presumption of total occupational loss." In making this argument, the Employer only applies one pathway for the presumption to arise under *Jensen* and ignores the clarification given by this Court in *Mueller Industries Inc. v. Waits*, 283 So. 3d 1137 (Miss. Ct. App. 2019).

¶19.    In *Jensen*, the Supreme Court articulated a rebuttable presumption of total occupational loss in cases involving the loss of use of a scheduled member:

> where a permanent partial disability renders a worker unable to continue in the position held at the time of injury, . . . such inability creates a rebuttable presumption of total occupational loss of the member, subject to other proof of the claimant's ability to earn the same wages which the claimant was receiving at the time of injury. [A] presumption [of total occupational loss] arises when the claimant establishes that he has made a reasonable effort but has been unable to find work in his usual employment, or makes other proof of his inability to perform the substantial acts of his usual employment.

*Jensen*, 828 So. 2d at 747-48 (¶21).

¶20.    In *Mueller*, this Court clarified "that a claimant is able to establish total occupational

6

loss by showing *either* that 'he has made a reasonable effort but has been unable to find work in his usual employment,' *or* by 'making other proof of his inability to perform the substantial acts of his usual employment.'" *RDJJ*, 322 So. 3d at 510 (¶38) (quoting *Mueller*, 283 So. 3d at 1142-43 (¶17)).

¶21. The Commission found both that Moore was unable to return to the position she held at the time of her injury, as she was no longer able to perform the essential functions of her pre-injury position, and that she was unable to perform the substantial acts of her usual employment.

¶22. With regard to her specific job at the time of her injury, the Commission found that Moore presented evidence that she was unable "to continue in the position held at the time of injury," finding that Moore applied twice to Ajinomoto but was not given an offer and that Moore's restrictions prevented her from any position at Ajinomoto, as the HR representative testified that there were no light duty positions.

¶23. In discussing performance of the substantial acts of her "usual employment," the Commission found:

> "usual employment" includes all jobs Moore has previously held or those requiring similar skills, experience, or physical demands. Moore's employment history consists almost entirely of production line, restaurant service, and other physically demanding work—each requiring repetitive hand use and lifting far in excess of ten pounds. She has no history of sedentary work and little formal education beyond high school. These facts, taken together with Dr. DiPaolo's restrictions, establish that Moore is unable to perform the substantial acts of her usual employment.

¶24. The Employer's true issue appears to be that Moore did not diligently pursue employment in a light duty field. However, this Court was clear in *RDJJ* that "once the

7

Commission has found substantial evidence showing the claimant is unable to perform the substantial acts of his usual employment, the claimant is not required to also prove a reasonable effort to find work . . . ." *Id.*, 322 So. 3d at 513 (¶47). Because we find that the Commission's application of the *Jensen* presumption is based on substantial evidence, we decline to address the reasonableness of Moore's job search. *See id.*

¶25.  In its reply brief, the Employer argues that the presumption was rebutted through evidence that the vocational expert identified "multiple light-duty positions within [Moore's] restrictions and usual employment" and that evidence, along with the Commission's finding that Moore's job search was not reasonable, rebutted the *Jensen* presumption. The Employer also argues that Moore's inability to apply for certain jobs was due to prior disciplinary history with employers and her felony record and that these hindrances did not entitle her to benefits under *Jensen*.

¶26.  "To rebut the presumption of total occupational loss . . . , [the Employer] bears the burden of showing all the evidence concerning wage-earning capacity, including education and training which the claimant has had, his age, continuance of pain, and any other related circumstances." *Mueller*, 283 So. 3d at 1150 (¶46). The evidence the Employer argues on appeal does not rebut the presumption, and the Commission found that the Employer had "not demonstrated that Moore has a realistic opportunity to obtain and sustain employment consistent with her restrictions, qualifications, and expertise." As stated, we will not second-guess the Commission's factual decisions where they are supported by the record, and the Commission's determination that the *Jensen* presumption applied and had not been rebutted

8

is supported by the record. We therefore conclude that the Commission correctly applied the *Jensen* presumption, and its decision finding Moore to have sustained a total occupational loss of both hands is supported by the record and the law.

## II. Causal Link between Moore's Osteoarthritis and her Employment

¶27. The Employer argues that there must be affirmative medical evidence establishing causation of an injury in order for it to be compensable and that there is no connection, as it did not appear until three years after her work and after "heavy gardening."

¶28. In workers' compensation cases, the claimant must establish "(1) an accidental injury, (2) arising out of and in the course of employment, and (3) a causal connection between the injury and the claimed disability." *Cooper Tire & Rubber Co. v. Loveless*, 312 So. 3d 395, 401 (¶17) (Miss. Ct. App. 2021). "Unless common knowledge suffices, medical evidence must prove the causal connection between a work-related injury and the claimant's disability." *Id.* "A claimant does not have to prove with absolute medical certainty that his work-related injuries were the cause of his disability. Even though the testimony may be somewhat ambiguous, as to causal connection, all that is necessary is that the medical findings support a causal connection." *Id.*

¶29. In this case, the Commission found that Moore's osteoarthritis was "aggravated or accelerated" by her work at Ajinomoto. The Commission cited the "credible and persuasive medical opinion of Dr. DiPaolo," noting that "Dr. DiPaolo's opinion is consistent with Moore's testimony that she had never previously experienced symptoms in her hands and had never received treatment for carpal tunnel syndrome or arthritis prior to working at

Ajinomoto." The Commission found that Dr. DiPaolo's testimony was "more credible" than the Employer's expert, Dr. Terry, because Dr. DiPaolo had "treated Moore extensively over a multi-year period, performed both of her carpal tunnel release surgeries, and had multiple opportunities to observe the progression of her symptoms and response to treatment." The Commission also noted that Dr. Terry "acknowledged Moore's arthritic condition was contributing to her ongoing pain and physical limitations."

¶30. The Employer argues that Moore's arthritis diagnosis followed a day of "heavy gardening" and did not relate to her employment at Ajinomoto, but the medical records show that the compensable osteoarthritis injury was to Moore's hands—a diagnosis of bilateral digital osteoarthritis. There is a passing mention of arthritis in Moore's elbow following a day of gardening, but this is not the injury the Commission deemed compensable.

¶31. The Commission's findings are supported by substantial evidence, and we will not reweigh the experts' credibility.

## CONCLUSION

¶32. We affirm the Commission's order finding that Moore suffered a total occupational loss and work-related osteoarthritis and awarding her permanent total disability benefits under Mississippi Code Annotated section 71-3-17 (Rev. 2021). The Commission's factual findings are supported by substantial evidence and the law.

¶33. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER AND WEDDLE, JJ., CONCUR.**

10